IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF DEL NORTE

---oOo---

**FILED**

JUL 2 4 2000

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 97-268-X |
| vs. | ) |
| | ) |
| ELLIOTT SCOTT GRIZZLE, (H-10106), | ) |
| | ) |
| Defendant. | ) |

---oOo---

REPORTER'S TRANSCRIPT OF PROCEEDINGS

ON HEARING ON MOTIONS

Had in the Superior Court of the State of California
in and for the County of Del Norte, beginning at 2:15
O'Clock, P.M., Thursday, February 4, 1999.  Before the:

Honorable ROBERT W. WEIR, Judge thereof

---oOo---

APPEARANCES

For the People:                    MICHAEL D. RIESE
                                   Interim District Attorney
                                   County of Del Norte
                                   County Courthouse
                                   Crescent City, California  95531
                                   By:  JAMES FALLMAN, Dep. D.A.


For the Defendant:                 RUSSELL J. CLANTON
                                   Attorney at Law
                                   725 H Street, Suite D
                                   Arcata, California  95521


Reported by:  Lorraine Kaye O'Hara, CSR No. 5637, RPR



1    MR. CLANTON:  And he is anticipated being -- being

2    called as a witness here and I think just as any

3    correctional officer would want to review his reports, those

4    sort of things, he's simply asking that all of his documents

5    be returned.

6        THE COURT:  Well, I think he and C.D.C. are going to

7    have to work that one out.  Between them.  Before the Court

8    did, at least.

9        All right, anything else?  All right, we'll have

10   to -- we'll have to simply delay Mr. Grizzle's matter then

11   until the representative arrives concerning the discovery of

12   the -- those items as to -- the other inmate.

13                        (The proceedings then
                          recessed until 3:37 p.m.
14                        while unrelated cases were
                          heard.)
15

16       THE COURT:  Returning to the People versus Elliott

17   Grizzle.  Case 97-268-X.

18   (Brief pause waiting for defendant to be brought in.)

19       MR. CLANTON:  Your Honor, does the Court have that

20   copy of the fax I sent?  I believe you had the copy I

21   originally sent.  You took that in chambers?  I believe I'll

22   need to address --

23       THE COURT:  Okay, I have the January 29th, 1999 copy,

24   and you're -- you want back the February 4th copy because it

25   has the same information?

26       MR. CLANTON:  If I may approach.

27       THE COURT:  All right, I'll return that to you.

28       MR. CLANTON:  Thank you.

1    THE COURT:  All right, we -- in the matter of the

2    People versus Elliott Grizzle, Mr. Grizzle is present, Mr.

3    Clanton and the District Attorney.  And we had recessed this

4    matter earlier this afternoon because of the issue of the

5    confidential information.

6        For the record, I did go through a confidential

7    Department of Corrections file that was provided to the

8    Court last week by agreement of the parties.  Pertaining to

9    Inmate Clark.  Apparently a witness in this case.  And I

10   have identified a number of matters which I find to be

11   discoverable and -- and -- and that should be turned over to

12   the defendant by way of discovery.

13       However, because it is confidential and privileged

14   information, I did notify Mr. Petzke of the Attorney

15   General's Office that before actually turning these matters

16   over I would give the State the option of whether they wish

17   to take some sanction because of the confidential nature of

18   the matter rather than turn it over.  He had indicated that

19   there would be a representative of the Department of

20   Correction of the State, I'm not sure who he had in mind,

21   would be here today.

22       MR. FALLMAN:  Lieutenant Kersh is here, your Honor.

23       THE COURT:  Who?

24       MR. FALLMAN:  Lieutenant Kersh.

25       THE COURT:  Lieutenant Kersh?  That's you, sir?

26       LIEUTENANT KERSH:  Yes, your Honor.

27       THE COURT:  All right, I have identified a total

28   of -- four?  Four items that appear to me to be properly

1  discoverable and -- I -- I had advised Mr. Petzke over the

2  telephone which ones they were.

3      Are you -- are you prepared to speak to whether those

4  are matters that the Department does want to turn over

5  rather than receive the sanction?

6      LIEUTENANT KERSH:  I would have to see the material,

7  your Honor.  I'm not familiar with it.

8      THE COURT:  All right.  Well, I have the file here.

9  If you need some time to examine it I guess you could.  Or

10  if you need -- if you could just glance at it or I can --

11  well, how would you like to handle it?

12      LIEUTENANT KERSH:  I'd like to take a look at it

13  briefly.

14      THE COURT:  All right.  Well, I have here the items.

15  If you'd like to approach the bench I can show you which

16  ones I'm talking about.

17      This can be off the record.

18  (Lieutenant Kersh at bench for off-the-record discussion.)

19      THE COURT:  Okay, so we're on -- back on the record.

20  Lieutenant Kersh has had an opportunity now to examine the

21  items that I have -- that I selected out as being relevant

22  or pertaining to this case to warrant discovery of them.

23      And Lieutenant Kersh, did you -- does the Department

24  have any objection then to those matters being revealed and

25  provided to the defense?

26      LIEUTENANT KERSH:  No, your Honor.

27      THE COURT:  All right.  So those documents, so that

28  we have a record of it now, one is a memorandum dated

1    January 13th, 1999 with a subject "Inmate Perjury" addressed

2    to the Deputy District Attorney and -- and authored by James

3    Rogers of the Office of Internal Affairs to the Northern

4    Region.   That will be the first one.

5         The next item is a memorandum dated January 22nd,

6    1999 addressed to Senior Special Agent David Mansfield and

7    authored by Office of Internal Affairs Special Agent James

8    Rogers with a caption "Inmate Frederick Clark intimidation."

9         The next item is a cover letter addressed to Special

10   Agent Rogers and signed by James Fallman, Senior Deputy

11   District Attorney.   The cover letter by itself is not

12   particularly significant, although I'll order that it be

13   included, but -- but accompanying it is a handwritten

14   document consisting of two pages apparently and dated

15   January 24th of '99 and apparently written by Inmate Clark

16   concerning his various complaints about his housing

17   situation and so on.

18        And so I find that those items should be and are

19   ordered to be provided to the defense.

20        Now, as to the whole -- because this is the original

21   file apparently and record of the Department of Corrections,

22   as to the whole file itself and -- and getting those --

23   copies of those documents from that file, how do you want to

24   handle the mechanics of that?

25        MR. FALLMAN:   Your Honor, I -- I don't want to really

26   get into that part of it but other than to say somebody in

27   my office, I think Rick Barton, got a call from Jim Rogers

28   saying that he needs his entire original file back

1    eventually and so however the Court and Mr. Kersh would

2    handle that.

3        THE COURT:  Well, I assume so.  I guess -- I guess

4    the simplest thing to do is just take photocopies of those

5    documents I have mentioned, give them to Mr. Clanton and --

6    and that's it.

7        Is that -- will that be sufficient or do you want

8    more of a record made?

9        MR. CLANTON:  Well, yes, your Honor, I would ask that

10   the entire file that the Court has before it be sealed for

11   possible appellate review.  We certainly --

12       THE COURT:  All right.  Well, maybe that's the best

13   way to handle it then.  So if you want to preserve the issue

14   of what might not have been ordered discovered out of the

15   file, probably the thing to do then is to -- is to make a

16   full copy of the entire -- of everything in the entire file,

17   it's not too voluminous anyway, and then make copies of

18   those things that I have mentioned just now on the record,

19   provide those to Mr. Clanton, place everything else under

20   seal to be -- to be opened on order -- only on order of this

21   court or a higher court for examination if there's a later

22   review as to the propriety of this order that I'm making

23   right now.

24       So who should accomplish that?

25       LIEUTENANT KERSH:  Our office can handle that, your

26   Honor.

27       THE COURT:  You can handle that?

28       LIEUTENANT KERSH:  (Nodding.)

1    THE COURT:  All right, so would you like me to turn

2    this -- turn this file over to you then for the purpose of

3    making those copies and providing -- providing the ones to

4    Mr. Clanton that he is to receive?  Do it that way?

5    LIEUTENANT KERSH:  (Nodding.)  Yes, sir.

6    THE COURT:  Okay, so what I'll do then is I'll order

7    that the one -- one set consisting of the whole file,

8    everything to be discovered and everything not to be

9    discovered will be provided to the clerk of the Court to be

10    held under seal, and those four documents that I mentioned

11    will also be copied and copies of those provided to the

12    attorneys.

13    So I'll turn this over to you then, Lieutenant Kersh.

14    MR. CLANTON:  If I -- I'm sorry, your Honor.

15    THE COURT:  Yes.

16    MR. CLANTON:  I apologize for interrupting the Court.

17    I'm just troubled somewhat by the returning of the file for

18    copying and return to court.  I think if it's filed it

19    should stay with the Court for the purpose of making the

20    copies.  I think once the Court's made its ruling I don't

21    think it's appropriate to hand the file back to C.D.C.

22    THE COURT:  Well, apparently this is an original

23    working file that I assume will have more documents -- this

24    is somebody's work that he's doing; he needs his records.

25    MR. CLANTON:  Well -- and I think that's fine and I

26    have no problem with getting it returned to him, but I think

27    this court should have an entire copy of what -- of those

28    documents prior to returning them to C.D.C.

1      THE COURT:  Yeah.

2      MR. CLANTON:  After this Court's ruling it sealed.

3      THE COURT:  Well, if you would prefer I guess we

4  could have the clerk make the copies.

5      MR. CLANTON:  I think -- I think just for the record

6  and for -- for abundance of caution I think that's

7  appropriate, your Honor.

8      THE COURT:  All right, I'll --

9      MR. CLANTON:  Because --

10     THE COURT:  I'll order then that the clerk will make

11 the copies and then -- so who do you want her to return the

12 original file then to or -- Mr. -- Mr. Fallman, were you

13 instrumental in getting that?

14     MR. FALLMAN:  No, that was brought here -- I think

15 Mr. Rogers personally brought that last week.

16     THE COURT:  Yeah.

17     MR. FALLMAN:  For possible in camera.  That probably

18 should go back to the Internal Affairs Department in

19 Sacramento and I don't have their exact address but it's

20 James Rogers, Special Investigator.

21     THE COURT:  All right.  Well, let's --

22     LIEUTENANT KERSH:  Yeah, it's in the file.

23     THE COURT:  Yeah, we'll give that to the clerk then

24 and she can make the copies and distribute them as I've

25 indicated and seal them as needed.

26     Okay, we've got that accomplished now.  What next?

27     MR. CLANTON:  Well, your Honor, I do have some

28 copies -- I would like to be heard in regards to the Court's

1    ruling.

2        THE COURT:  Yes.

3        MR. CLANTON:  And regards to some questions.  Part of

4    this record with regard to the Clark matter I want to make

5    sure includes my letter and fax to the Court making clear

6    what I was trying to receive in terms of discovery.  From

7    what I understand the Court is going to grant me, there are

8    significant portions what I consider relevant discovery that

9    are not going to be coming to the defense as a result of the

10   Court's ruling.  I want to make sure that the record shows

11   that I have listed a number of items there that I think

12   are -- absolutely essential so that I have a clear

13   understanding of the nature of Mr. Clark's contact with

14   Internal Affairs, his reversal from earlier testimony and

15   any and all inducements, incentives or benefits he's

16   received as a result of that.  I don't --

17       THE COURT:  Well, you need to be aware that the file

18   I was given for in camera review doesn't include a lot of

19   that stuff you're talking about in any way, shape or form

20   so --

21       MR. CLANTON:  That would be fine.  I just want to

22   make the record that the people who are present at this

23   proceeding also have a copy of this very list that I faxed

24   to the Court.  If that file does not contain any of that,

25   my -- my requests are directed directly at the District

26   Attorney and C.D.C. whose representatives are present today

27   to whom my requests are -- are well known and have been

28   memorialized.

1    THE COURT:  Well, so that we're breaking down this --

2    this down into pieces so that we can deal with, with respect

3    to this file, this file of I guess Special Agent Rogers.

4    MR. FALLMAN:  (Nodding.)

5    THE COURT:  Let's take care of that first and then if

6    you have other requests we'll talk about other things, but I

7    will -- so that it's clear I will make note that there was a

8    memorandum on the letterhead of Russell Clanton dated

9    January 29th of '99 that was receive stamped into the Court

10   on -- the Court's file on January 29th which has a total of

11   thirteen items that Mr. Clanton feels should be provided by

12   way of discovery in this case.  And I have considered this

13   file in connection with Mr. Clanton's memorandum in

14   determining what items should be discovered from that file

15   of Mr. Rogers.

16   Now, once -- once we leave the file aside of Mr.

17   Rogers then we can get onto other issues.

18   MR. CLANTON:  That's fine, your Honor.

19   THE COURT:  But is there anything else with respect

20   to this file that you want to address on the record?

21   MR. CLANTON:  No, I believe the fact that the Court

22   has -- has agreed with the defense that should be sealed for

23   possible appellate review ends the matter.

24   THE COURT:  Okay.  So what else then on the issue of

25   discovery, and are these matters that you have been unable

26   to resolve informally since you're required to do that

27   first?

28   MR. CLANTON:  Well, I would -- compartmentalize my

1    request, your Honor.  Specifically I'm speaking now as to

2    the Clark matter.  The People received likewise on January

3    29th and -- a copy of my letter to the Court that the Court

4    has read into the record with regards to the number of

5    requests.  The People have that.  I know that C.D.C. has

6    been made aware of the contents of that letter.  I think all

7    of those items that I've listed there are available to

8    C.D.C. or the People and that they are in fact fundamental

9    to my understanding of Mr. Clark's relationship to the

10   People, any of the inducements, any of the benefits, any of

11   the incentives that he has received in any way, shape or

12   form, whether they be reductions in sentence, intervention

13   by the District Attorney or C.D.C.'s review of any employee

14   misconduct issues that Mr. Clark has raised in the past.

15        And I say that only because the memo that I received

16   that was authored by Mr. Rogers specifically targeted the

17   employee misconduct issues that Mr. Clark had apparently

18   with C.D.C. and I think that the mere fact that those are in

19   the report are red flags for me.  I'm not certain what that

20   means.  Have they looked into these employee misconduct

21   issues, are they -- are those going to be resolved, is Mr.

22   Clark going to pull in his horns in regards to any issues or

23   litigation that he has in those areas in exchange for this

24   testimony, all of those I think are very relevant when it

25   comes to determining the nature of the relationship with the

26   District Attorney and the measurement of credibility for a

27   witness that the People might call at this late date.

28        THE COURT:  So which of these things do you claim

1     exist but you have not been given?

2          MR. CLANTON:  All of them.

3          THE COURT:  All right.  Well, what makes you think

4     that they do exist and that they are being withheld from

5     you?

6          MR. CLANTON:  Well, number one, I made the request

7     and they haven't come to me.

8          THE COURT:  All right.  Well, that doesn't mean they

9     exist.

10          MR. CLANTON:  Right.  That's true, your Honor.  I

11     would just say -- I don't think that there's any argument

12     that Mr. Fallman has had some conversation with Mr. Clark or

13     that C.D.C. has had some conversation with Mr. Clark and

14     there's been some discussion of what Mr. Clark's going to

15     get out of this testimony.

16          Now, I think that --

17          MR. FALLMAN:  Your Honor, maybe I could shorten this

18     up a little bit.  I have received a one-page letter from Mr.

19     Jim Rogers in Sacramento which led me to know that perhaps

20     Mr. Frederick Clark might have information valuable to the

21     People in this case.  I discovered that one page -- I think

22     the bottom of it was the part that was most relevant to me,

23     and the rest of it may be talking about things that counsel

24     is talking about here.  Based on that letter, I went out to

25     Pelican Bay State Prison after having Mr. Daniel L. Smith,

26     Special Agent from the Special Service Unit of the

27     Department of Corrections, come up from Sacramento and in

28     the room was Officer Willis and we did a video of a

1  statement of Mr. Clark.

2      The things that he was offered were immunity; that he

3  would not be charged -- that he would not be charged for

4  that he said was perjuring himself when he testified in the

5  People versus Littrell.  He was not offered immunity for --

6  for any later perjury.  He was made aware that there -- I

7  believe by Officer Willis, that there may be one or more

8  D.A. referrals pending but unfiled in my office.  No deals

9  were made or offered to him that we would dismiss those or

10  do anything with those if those exist, and I haven't seen

11  them; they're not part of any deal.

12      He -- the other thing that he wanted, that he most

13  wanted and that I have encouraged C.D.C. to cooperate on is

14  he wants safe housing.  Because of the fact that he says

15  that he's willing to come forward and testify now, he wants

16  safe housing.  And I'm -- I want him to get that and I'm

17  encouraging C.D.C. --

18      THE COURT:  Well, aside from the representations

19  you're making now about what's been offered him or whatever,

20  and hasn't, has this ever been reduced to writing or is

21  there any memorandum or anything that would be discoverable

22  about this?

23      MR. FALLMAN:  It -- I don't think so other than if

24  it's on the tape, we've given a copy of that videotape to --

25  to counsel.

26      MR. CLANTON:  (Nodding.)

27      MR. FALLMAN:  And if it's on there it's on there.  If

28  it was said before that was turned on I don't know.  Because

1  I haven't looked at the tape since we went out there but --

2  at any rate, that's --

3      THE COURT:  Well, are you revealing all this to him

4  for the first time or has this already been done?

5      MR. FALLMAN:  No, I've told counsel what I'm saying

6  to you right now before.  The -- he has brought up something

7  that I -- that I should make clear, though.  Because in

8  cases of witnesses who have testified before, inmate

9  witnesses, it is my routine and practice to send a letter to

10  the Board of Prison Terms which I've later learned may not

11  be the right place, but I would send such a letter normally

12  to -- to whatever the right place is in C.D.C. under Title

13  15 asking that the correct tribunal consider taking up to

14  one year off of a -- any inmate sentence who confers a

15  benefit on society.  I write those kind of letters.  I

16  intend to write those kind of letters for inmate witnesses

17  in this case but not for Mr. Clark.

18      THE COURT:  Well, to solve our immediate problem

19  which is whether there's -- there's discovery out there to

20  be turned over, how can we quickly get to the bottom of

21  this?  As to what is and what isn't in existence and should

22  be discovered?

23      MR. CLANTON:  It -- I'm in a -- in a very big

24  disadvantage, your Honor.  I've communicated my request

25  immediately --

26      THE COURT:  Right.

27      MR. CLANTON:  -- the day after I became aware of

28  this.

26

1        THE COURT:  So what do you want to do about it?

2        MR. CLANTON:  Well, to date I haven't received

3    anything but neither have I been told it doesn't exist.  We

4    have a situation if in fact he is getting a housing

5    change -- people who are in the SHU are in some conditions,

6    desire housing change.  That in many instances can be an

7    incentive, an inducement to say anything here.  And I think

8    if in fact that housing change has been -- has been

9    undertaken, that's memorialized somewhere in a memo and I'd

10   like that memo and --

11       MR. FALLMAN:  Your Honor?

12       MR. CLANTON:  I -- excuse me.  I must say that

13   Officer Willis has been very accommodating on most issues

14   and I think that if that were available she would make that

15   available to me.  I don't have any problems --

16       THE COURT:  Well, procedurally, what do you want done

17   right now this afternoon?

18       MR. CLANTON:  Well, what I would like is I'd like a

19   statement from counsel or C.D.C. that they have a list of my

20   requests to tell me what does not exist.  I don't have that

21   to date.  After all of the things on this list I don't have

22   a list of those things which exist or do not exist.  I've

23   already made the request.  The request is a week old at this

24   date.

25       THE COURT:  You do that.

26       MR. FALLMAN:  Your Honor, what I would have him do on

27   the face of the trial is have him read item by item so we

28   have them right now.

1  THE COURT:  Well, I have a whole slew of people

2  waiting this afternoon that were supposed to start two hours

3  ago at 2:00 o'clock and I've got to get through that work.

4  If you -- if you folks would like to hold a meeting

5  perhaps --

6  MR. FALLMAN:  (Nodding.)

7  THE COURT:  -- and go over this informally which is

8  what -- how you're supposed to do it anyhow, maybe we can --

9  maybe we could get these needs met this afternoon.

10  MR. FALLMAN:  Fine.

11  THE COURT:  Would that -- would that work?

12  MR. CLANTON:  I'm open to that, your Honor.  I just

13  make one comment on the record that I would like a copy of a

14  transcript of this proceeding with regards to all the

15  issues.

16  THE COURT:  Well, you can see the court reporter and

17  I'm sure you can get a transcript from her.

18  MR. CLANTON:  I would just ask that one be --

19  THE COURT:  How soon you can get it I don't know.

20  They're very busy but --

21  MR. CLANTON:  I understand, and actually --

22  THE COURT:  Talk to her about that.

23  MR. CLANTON:  I will.

24  THE COURT:  All right, you want to just recess this

25  matter while I take up my 2:00 o'clock calendar that's been

26  waiting?

27  MR. FALLMAN:  (Nodding.)

28  THE COURT:  And then we'll get back to you before

1    we -- wrap up today?

2        MR. FALLMAN:  Yes.  (Nodding.)

3        MR. CLANTON:  That's fine, your Honor.  I'll meet --

4        THE COURT:  All right, we'll do that.

5                          (The proceedings then

6                          recessed till 5:05 p.m.
while unrelated cases were

7                          handled.)

8        THE COURT:  All right, People versus Elliott Grizzle.

9    We are again in session with Mr. Grizzle with Mr. Clanton

10   and the District Attorney.

11       And I hope you've had a productive session with -- on

12   discovery issues?  Have we got it all resolved, hopefully?

13       MR. CLANTON:  Well, it's resolved I believe from

14   C.D.C. and People's point of view, not to my satisfaction,

15   but they've basically told me what they're not going to give

16   me and that's that.  So in that sense it's resolved; it's

17   just simply not to my satisfaction.

18       THE COURT:  So then are we -- is there any kind of a

19   record we need to make or are we ready to go to trial then

20   on Monday?

21       MR. CLANTON:  Well, I think we need to make a record

22   so if I need to seek further review of my denial I can do

23   so.

24       THE COURT:  All right, who would like to state the

25   issue then for the record?

26       MR. CLANTON:  Well, I think we need to -- well,

27   I'll -- I'll try, your Honor.  Is -- if Officer Willis was

28   here it might be more --

1    TRANSPORTING OFFICER:  She's in the restroom.

2    MR. CLANTON:  I think we ought to wait for her

3  because some of these issues are directly relating to her

4  denials.

5    THE COURT:  All right.

6        (A brief pause in the proceedings.)

7    THE COURT:  Okay, Officer Willis, the court liaison

8  officer, is also present.

9        Okay, go ahead and state for the record what the --

10  what the unresolved issues are pertaining to discovery.

11    MR. CLANTON:  Well, I would start, your Honor, with

12  my request with regards to Mr. Clark, and it's important

13  that I make a record of these things so I'll try and be

14  brief but I want to get to the point.

15        Specifically with the letter that is part of the

16  record in the Court's file, the July -- the January 29th

17  letter to the Court where I make my request, we specifically

18  addressed those in a session with Miss Willis -- excuse me,

19  Officer Willis and Mr. Fallman.  Number one on that list was

20  I had requested any and all benefits or promises to Mr.

21  Clark from any agency or individual given in exchange for

22  his testimony.  I was given a letter and -- which indicates

23  that Mr. Clark was in fact offered to parole in another

24  state rather than in -- particular county.  And I am

25  informed by counsel and by C.D.C. that other than immunity

26  and some other -- potentially housing changes of which were

27  nonspecific, that is the sum total of the discovery.  So

28  I'm -- I take counsel and C.D.C. at their word in that sense

1    and I do -- I am in receipt of the letter and I guess if I

2    develop any other issues I'll certainly make those known and

3    I have the opportunity to cross-examine Mr. Clark so to that

4    degree I'm satisfied.

5         Number two, the date and report therein that Mr.

6    Clark was first contacted by C.D.C. or other agency wherein

7    he offered to testify to the People.  I am told that from --

8    from Officer Willis and from Mr. Fallman that what I have

9    here with what this court has provided me to date is the

10   entire record to indicate the first time Mr. Clark may have

11   contacted C.D.C. or any agency with regards to his desire to

12   testify.

13         MR. FALLMAN:  Well, may I -- may I add something to

14   that?

15         MR. CLANTON:  Sure.

16         MR. FALLMAN:  Your Honor, what I've said is based on

17   the one-page letter which I received from Jim Rogers.  I

18   subpoenaed Mr. Rogers here last week with his entire file

19   on -- relating to Clark.  Now, I can't say whether

20   everything in the world that they have on Clark is -- is in

21   that file or not, but -- but my intent in the subpoena

22   was -- the subpoena duces tecum was to bring everything that

23   they had relating to Frederick Clark, whatever it was that

24   caused them to fax me the one page that I had which I gave

25   to counsel so -- the Court has seen apparently what they

26   have.  And if there's something in that that the Court has

27   held back for whatever reasons then so be it, but I'm not

28   saying that's everything.  I'm saying that -- I believe that

1    the file that you saw was everything.  And counsel now has

2    what you're -- you've allowed him to have out of it plus the

3    one page that I gave him.  Plus the videotape that I gave

4    him.

5            MR. CLANTON:  Well, obviously what I'm concerned

6    about is the timing of Mr. Clark's contact with C.D.C. and

7    his desire to -- to change his testimony a hundred and

8    eighty degrees.  It's counsel's representation that

9    everything he has seen with regards to that is -- is, to his

10   knowledge, what I have here although there may be other

11   items in that file that the Court has viewed and that I

12   requested sealed for appellate review.  So it's not

13   necessarily to my total satisfaction but I -- I will take

14   Mr. Fallman at his word that he can't provide any other

15   additional -- additional information.  If it is in fact in

16   that file then it is in fact available for appellate review.

17           THE COURT:  All right, continue.

18           MR. CLANTON:  The nature of all employee misconduct

19   issues Mr. Clark had or has with C.D.C. and how it -- or

20   they have been affected by Mr. Clark's decision to testify

21   for the People.

22           You want to address that the way that -- you approach

23   that?  (Mr. Clanton speaking to Ms. Willis.)

24           That the -- your Honor, they're basically saying I'm

25   not going to get any information with regard to that bottom

26   line and that's not to my satisfaction.

27           MR. FALLMAN:  Well, I would address that, number one,

28   Jim Rogers works for the Internal Affairs Division in

1    Sacramento.  My understanding of the way that the Department

2    of Corrections -- after the Jose Garcia trial, they moved

3    their serious internal affairs matters to a separate

4    department in Sacramento and northern region and another one

5    in the southern region and I would assume that whatever

6    internal affairs things that they had that related to Clark,

7    any complaints he may have made would have gone to Mr.

8    Rogers.  Since I subpoenaed Mr. Rogers' entire file duces

9    tecum, again I would have to refer to whatever the Court

10   read.  If there's -- I suspect and can only suspect that --

11   that counsel has already gotten whatever he's going to get

12   because you've already done the in camera review from the --

13   from the Internal Affairs officer whom I subpoenaed the

14   entire file to bring to you from.

15           MR. CLANTON:  Well, I'm -- I've raised that point

16   several times to the Court.  I think I don't need to go on

17   and on about that.  Since -- one week ago when I was first

18   made aware of Mr. Clark's sudden change of heart in these

19   matters I immediately contacted the Court and counsel and

20   gave them the list of discovery issues I thought were

21   relevant with regards to that.  The employee misconduct

22   issues that Mr. Clark had I've several times indicated to

23   the Court are a problem for me.  I want to know what those

24   are about.  I've made my request.  It's been denied by

25   counsel.  He -- basically says whatever he has may be in his

26   file and so it's up to the Court's decision.

27           THE COURT:  Okay, continue.

28           MR. CLANTON:  Any and all notes or reports by James

1    Rogers of C.D.C. Internal Affairs during his investigation

2    of Mr. Clark and his purported desire to testify for the

3    People.  I'm told by counsel and Officer Willis that to

4    their knowledge this is all they have that -- with regards

5    to -- that it is all they know about is what I have and that

6    there may be other things in the file.  The Court has that

7    so therefore the ball's in the Court's court.  I obviously

8    would like any additional reports by Mr. Rogers if they

9    exist.

10           THE COURT:  All right.  Well, we -- I've gone through

11   that and picked out anything that might be relevant so I

12   think that's been accomplished.

13           MR. CLANTON:  Okay.

14           THE COURT:  All right.

15           MR. CLANTON:  And again I would just note that

16   that's -- if there are additional reports from Mr. Rogers

17   and we're not getting those, that would be an objection we

18   would raise but the file's sealed.

19           Any and all reports involving Mr. Clark at Pelican

20   Bay State Prison since July 25th involving, but not limited

21   to, reports of threats, actual assaults, 115's, assess to

22   other inmates involving Mr. Clark, 114's, or other official

23   notes involving Mr. Clark since July 1997.  In speaking with

24   Officer Willis she indicated to me that she is going to

25   review files to determine if there is any relevant

26   information with regards to that and that she will do that

27   as soon as possible and hopefully by tomorrow.

28           MR. FALLMAN:  But counsel has also agreed that to

34

1    limit the time period down that she has to look at that it

2    will only be after the date of the Gary Littrell trial

3    because counsel has stated that he wants this because he

4    wants to see if anybody intimidated Clark because he

5    testified in the Gary Littrell trial.  Therefore any date

6    prior to that would be irrelevant.

7         MR. CLANTON:  That's -- that's accurate, your Honor.

8    I think that's the operative time frame.

9         THE COURT:  All right, go ahead.

10         MR. CLANTON:  Any tape-recorded or video statements

11    by Mr. Clark since July 25th, 1997, and any and all audio or

12    video statements by any other inmate concerning Mr. Clark

13    since July 25th, '97.  I'm informed by counsel and Officer

14    Willis that my tape of Mr. Clark to their knowledge is the

15    sum total of any electronic statements.  I'm not certain

16    whether the file the Court has alludes to the existence of

17    any other audiotapes or videotapes.  Certainly if they do,

18    again we would make the request of the Court that those be

19    provided to us.  If the Court decides not to I would just --

20    indicate we object to that and communicate to the appellate

21    courts through the sealed file.

22         Number eight, all reports relating to the

23    investigation of Mr. Clark's sister as it relates to the

24    report filed by James Rogers.  I am told absolutely by Mr.

25    Fallman and Officer Willis that there are no attempts at

26    investigation in that particular area and I'm going to take

27    them on their word at that.  I think they can be trusted.

28         MR. FALLMAN:  Well, what -- what's been said is we've

1    asked Clark to see if the person will be willing to come

2    forwards and cooperate, but there's so little time left

3    before trial that we don't have the wherewithal to send

4    people where this person may be and invest in that in case

5    that ends up being a wild goose chase.  So we're not

6    affirmatively doing that, but if he comes back and says that

7    his sister will testify, we would accept that if it happens

8    and that's what we've told him.

9         MR. CLANTON:  And I would only ask if that is done

10   that I be communicated to directly and immediately.

11        Number nine, all logs showing housing of Mr. Clark,

12   Mr. Grizzle, since July 25th, 1997.  Officer Willis has

13   indicated to me that she's going to do her best to try and

14   provide that to me.  So we're agreed on that one.

15        All statements of Brian Healy as they relate to

16   Frederick Clark since July 25th of '97.  I am told by

17   counsel and Officer Willis that there are none and that if

18   they were to exist they would have them.  Again, I would --

19   I'm in a position of taking them at their word on that.  So

20   if anything were to surface, we'll deal with it at that

21   point.

22        Eleven, the current housing location of Brian Healy

23   within C.D.C.  I'm told that that's not going to be given to

24   me.

25        The current housing of Frederick Clark in C.D.C.  I'm

26   told that that's not going to be given to me.

27        And any additional statements or reports concerning

28   Frederick Clark since January 13th, 1999.  I'm told by

1         THE DEFENDANT: Not acceptable.

2         THE COURT: Not acceptable. Well, then.

3 Procedurally what do you want to do?

4         MR. FALLMAN: Well, I'm -- I'm not sure -- I mean

5 you -- you've heard the evidence of the last trial. I'm not

6 sure that these people would come up with anything other

7 than just a discovery fishing expedition. I would just as

8 soon go forward with the trial.

9         THE COURT: Well, the different -- part of -- part of

10 the reason we have a different ball game here than we did

11 with Ridinger is that the Ridinger case was not a

12 who-done-it case. I mean, everybody knew --

13         MR. CLANTON: I'm sorry, your Honor?

14         THE COURT: -- who Ridinger --

15         MR. CLANTON: I apologize for interrupting but the

16 Court's indicating Ridinger.

17         MR. FALLMAN: Littrell.

18         THE COURT: Littrell. Everybody knew who Littrell

19 killed. I mean, he didn't even deny it. So to a large

20 extent, what went down between he and Marsh in that cell

21 really was -- you know, the issue, was it self-defense or

22 not. But in this case where you're -- and although

23 admittedly there was a conspiracy count and so on, but --

24 but in this case you -- you essentially are hanging your hat

25 entirely really on the conspiracy.

26         I mean, everybody knows this defendant did not kill

27 Marsh. He couldn't have. He was in another cell.

28         MR. FALLMAN: (Nodding.)

1          THE COURT:  His liability is -- if any, is

2    derivative.  And so -- and because essentially your -- your

3    motive and really the only motive I'm aware of that you have

4    to show why he would have helped Littrell to do this is this

5    gang thing.

6          MR. FALLMAN:  (Nodding.)

7          THE COURT:  So whatever comes of this, this defendant

8    has a stronger argument than Littrell had.

9          MR. FALLMAN:  (Nodding.)

10          THE COURT:  To get -- to delve into this stuff.

11          Well, I guess what I'm -- what I am considering

12    doing, and the hour is quite late.  I've been in session

13    here with a couple of very short breaks ever since 1:00

14    o'clock.  Not to mention working this morning as well.  I'm

15    exhausted, frankly.  And I think everybody else is --

16    probably is, too.  We have one more business day left before

17    our trial commences on Monday.  And I would propose that we

18    might consider sleeping on this and coming back sometime

19    tomorrow maybe about 3:00 o'clock.  With a view to resolving

20    this rather than -- rather than to try to thrash this out at

21    some late hour of the night tonight.  And you might consider

22    how this case might be -- both sides might -- might consider

23    how this case might be resolved.  I mean, if not, how we're

24    gonna -- how we're gonna handle this discovery issue.

25          Is that -- is 3:00 o'clock tomorrow beyond the means

26    of the transportation team?  Is that -- does that put you

27    guys in an impossible box?

28          Sergeant, how are you with your schedule?