FILED

JUN 18 2007

SUPERIOR COURT OF CALIFORNIA
COUNTY OF DEL NORTE

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF DEL NORTE

IN RE:  ) CASE NO.: HCPB02-5159
)
)
*ELIOT GRIZZLE,* )
*H-10106,* ) RULING ON PETITION FOR WRIT OF
) HABEAS CORPUS
Petitioner, )
)
On Habeas Corpus. )
)

BACKGROUND

Petitioner Eliot Grizzle is an inmate at Pelican Bay State Prison. In 1999 he was convicted of murder and conspiracy to commit murder related to the death of inmate Aaron Marsh. A detailed recitation of the facts are set out in the Court of Appeal decision. Amend. Pet. Ex K. Below is a summary of the relevant facts.

Petitioner was originally a co-defendant with another inmate, Gary Joe Littrell, who was also charged as a co-conspirator. However the trials were severed due to *Aranda* issues. Littrell, who was tried first, was convicted of second-degree murder, but acquitted of first-degree murder and conspiracy.

1

Testimony elicited at Petitioner's trial established that he, the victim, and Littrell were all members of the Aryan Brotherhood (AB) prison gang. Witness Brian Healy testified at both trials that he was a recent dropout of the Aryan Brotherhood. Healy testified that prior to dropping out he had passed on to Petitioner an order from the gang leadership that Marsh be killed and that Petitioner eventually passed the order to Littrell. The prosecution's theory of the case was that Petitioner manufactured pruno in his cell, laced it with prescription medications, and had it delivered to Littrell and Marsh. Marsh drank the fortified pruno and after he fell into a weakened state, his cellmate Littrell killed him by strangulation pursuant to the Aryan Brotherhood order. At Petitioner's trial, Healy also testified that Petitioner reported to him that Littrell had strangled Marsh.

At Littrell's trial, a black inmate named Fredrick Clark testified that Healy had admitted to Clark that Healy had made up the story in order for Healy to get favorable treatment for himself. However, shortly before Petitioner's trial Clark told the Deputy District Attorney and California Department of Corrections investigators he had lied at Littrell's earlier trial at the behest of Petitioner. In return for immunity from prosecution for purported perjury in Littrell's trial, Clark agreed to testify truthfully at Petitioner's trial. At the second trial, Clark testified Petitioner promised and eventually had him paid $500 for discrediting Healy at the first trial. According to Clark, he was recruited to testify on behalf of Littrell because as a black, he would have no apparent motive to lie for the AB, and he would have greater creditability than Healy, who admitted at both trials that he had previously committed perjury during his own murder trial – also an AB hit. Prior to Petitioner's trial, Clark claimed to have a change of heart in testifying for the AB due largely to Petitioner's plan to kill Healy's young step-daughter in retaliation for Healy's turning on the Aryan Brotherhood.

Other inmates who implicated Petitioner in testimony at trial included:

- Inmate Contreras, a tier tender, testified that he was the person who delivered the pruno to Littrell and Marsh's cell after watching Petitioner put drugs into it.

- Inmate Ridinger testified Petitioner had solicited him to kill Marsh, after the AB hierarchy ordered the hit, but that he eventually declined. When he informed Petitioner he would not make the hit, he testified that Petitioner told him that Littrell would do it. On the day of the killing, Ridinger testified he saw Contreras deliver the container to the cell occupied by both Littrell and Marsh.

- Inmate Rubdioux testified that after the killing he had a conversation with both Petitioner and Littrell in which they admitted killing Marsh and discussed their trial strategies and a plan to kill Contreras, apparently to prevent his testimony.

## DISCUSSION

Petitioner initially filed his habeas corpus petition in 2002 claiming numerous grounds for relief. For reasons related to a federal investigation, the case was delayed until Petitioner filed an amended petition in August 2006. The amended petition cites two grounds for relief:

(1) That the prosecution knowingly, or recklessly, presented perjured testimony of Clark and Healy; and

(2) That Petitioner's trial counsel, Russell Clanton, rendered ineffective assistance of counsel by failing to prepare and failing to investigate the perjury, which therefore was not brought to the attention of the judge and jury. The alleged failure to prepare was counsel's apparent failure to review a videotaped interview of Clark conducted the month before trial and to do follow up the review with further investigation.

Because a petition for habeas corpus seeks to attack collaterally a presumptively final judgment, the petitioner bears a heavy burden to plead and prove grounds for relief. *People v. Duvall* (1995) 9 Cal. 4th 464, 474. "For purposes of collateral attack, all presumptions favor the truth, accuracy and fairness of the conviction and sentence; *defendant* must undertake the burden of overturning them. Society's interest in the finality of criminal proceedings so demands and due process is not thereby offended." Ibid. (emphasis original; internal citations omitted).

## PERJURED TESTIMONY ALLEGATION

A judgment of conviction based on testimony known by representatives of the state to be perjured deprives the defendant of due process of law and may be attacked by habeas corpus. In making such an attack, however, Petitioner must establish by a preponderance of the evidence that perjured testimony was adduced at his trial and that representatives of the state knew that it was perjured and that such testimony may have affected the outcome of the trial." *In re Imbler* (1963) 60 Cal 2nd 554, 560 (numerous internal citations omitted but include references to *Mooney v. Holohan,* (1935) 294 U.S. 103, and *Napue v. Illinois,* (1959) 360 U.S. 264, referred to *infra*). See also Cal. Pen. Code § 1473 (b)(2) (writ relief appropriate when false evidence presented that is "substantially material or probative of guilt.")

Petitioner alleges that virtually all of Clark's testimony at Petitioner's trial was perjured except the testimony that he had known inmate Healy for years. See Amend. Pet. ¶ 55. However no direct evidence is presented for the assertion that critical testimony was perjured at Petitioner's trial. Petitioner points to Clark's prior, contrary testimony in the Littrell trial, his purportedly false allegations about Department of Corrections personnel and his *later* conviction for a grisly murder after his release from prison and after testifying, as evidence of his low character.

But no direct evidence, such as declarations from Petitioner or others, establishes that Clark lied at Petitioner's trial. The same applies to Healy's testimony. Petitioner points to a single instance in which Healy's and Clark's testimony varied. Clark testified he had known Healy for years. R.T. 766. However Healy testified that to his knowledge he had never seen Clark. R.T. 896. Petitioner argues that this contradiction made clear one or both committed perjury and that it therefore became incumbent on the prosecution to notify the court that perjury had occurred and to launch an investigation into the perjury. Amend Pet. ¶ 56.

In a similar situation where contradictory evidence was presented at trial, the California Supreme Court noted:

> "An application for habeas corpus on the ground of perjured testimony must not only set forth the facts that <u>prove</u> perjury <u>and</u> knowledge thereof by the prosecution, <u>but must show that these facts existed independently of the contradictions appearing at the trial</u>." *In re Waltreus* (1965) 62 Cal. 2nd 218, 221 (emphasis added).

In *Waltreus* the court declined to appoint a referee to act as a fact finder upon determining that the matters relied upon to claim perjury were either brought out at trial or were known to Petitioner at the time of trial.

In this case, the only alleged proof (as opposed to assertion) of perjury at Petitioner's trial presented is the discrepancy between the testimony of Healy and Clark about whether they knew each other. While knowing which one was telling the truth might help the trier of fact to make credibility determinations, the discrepancy occurred in the trial and therefore apparently was known to both the judge and the jury. The jury could evaluate the testimony and decide what weight to give it and whether the discrepancy was critical. Without offering proof, Petitioner asserts Clark testified truthfully on this issue alone and that Healy was lying on this point. It must be noted that this was a collateral point, and not directly critical to whether Petitioner participated in conspiracy to murder for which there was substantial direct evidence. There is also no proof presented that the District Attorney was aware before Healy's testimony that he would deny knowing Clark;

therefore there is no proof the prosecutors had advance knowledge of any potential discrepancy, let alone perjury.

Contrast these facts with those in *Northern Marianna Islands v. Bowie*, 243 F. 3rd 1109 (9th Cir. 2001), relied upon by petitioner. In *Bowie*, prosecutors before trial found "concrete documentary evidence suggesting that the prosecution's . . ." witnesses against the defendant ". . . were conspiring to testify falsely against him" (i.e., they intercepted a letter between two witnesses outlining a conspiracy to frame the defendant for a crime the writer had committed). *Id.* at 1111. There, the Ninth Circuit found that failure to investigate the letter was "at least the equivalent of knowingly sitting quietly by . . . while your witness lies on the stand."

In the case at bar, the prosecution was dealing with members of the Aryan Brotherhood prison gang housed at Pelican Bay State Prison's security housing unit (SHU), which houses "the worst of the worst" of California's prison population. See *Madrid v. Gomez* (1995) 889 F. 2nd 1146, 1155. Prison gang members are typically involved in such activities as drug trafficking, extortion, and premeditated assault. *Id.* at 1240. As Healy testified at trial, AB members are obligated to commit perjury when they can get away with it. R.T. 910.

In this case Healy and Clark both admitted in front of the jury prior perjury. However, there was no evidence presented in the petition that suggested the prosecution had actual knowledge, or particular reason to suspect, perjury in this case that needed to be investigated further. The discrepancy was whether the two witnesses knew each other. Due to the secretive nature of the prison gangs, the commitment to perjury, and the background of the people who obtain membership in the gang, trials of Aryan Brotherhood members would be almost impossible if only people of good character, free of past violence and lies, were allowed to testify.

Petitioner argues, based upon *Morris v. Ylst*, 447 F. 3rd 735 (9th Cir. 2006), and *Bowie*, that he need not show "actual" perjury to prevail in this action. This Court disagrees. Federal and California cases are in agreement in the treatment of

6

*Moonie–Napue* claims. For instance, in *Morris* the Ninth Circuit rejected petitioner's contention that *Bowie* virtually requires reversal whenever perjured testimony has been presented. *Morris, supra,* at 745. As stated in <u>*Imbler, supra,*</u> petitioner must establish that there was perjury, that the prosecution knew of it (or the functional equivalent), and that there was prejudice to the defendant that might affect the outcome of the trial. In *Morris*, the court held that while it found that false testimony had been presented, "there was insufficient evidence to permit a conclusion that correcting the falsehood . . . would have provided support for his claims of actual innocence." The test for prejudice under *Moonie–Napue* is the same as that of materiality in a *Brady v. Maryland*[*] claim. The reviewing court must decide whether petitioner received a trial resulting in a verdict worthy of confidence "even with the perjured testimony." *Morris* at 745.

      In this case, Petitioner has not established that perjury occurred, with the possible exception as to the collateral issue of whether Clark and Healy knew each other. Failure to investigate that issue by the prosecution after the discrepancy arose during trial was not prejudicial under *Moonie–Napue*, and this Court is not moved to believe Petitioner did not receive a fair trial or that the verdict is not worthy of confidence. There was extensive evidence from the numerous witnesses that Petitioner was involved in the conspiracy and murder and that he admitted to the same afterward. See also *In re Cox* (2003) 30 Cal 4th 974. 6 Witkin & Epstein, *Cal. Criminal Law*, Criminal Writs § 42 (3rd ed.).

---

[*] (1963) 373 U.S. 83

# INEFFECTIVE ASSISTANCE OF COUNSEL

The ineffective assistance of counsel claim arises from the alleged failure of Petitioner's trial counsel to review a videotaped interview of Clark by the deputy district attorney and the Department of Corrections investigator conducted the month before trial. In a post-trial hearing, defense counsel asserted that he had not been provided the tape and never had the opportunity to review it before trial. Amend. Pet. Ex. I, p. 93. However, transcripts of a pre-trial hearing on discovery issues seemed to include acknowledgement by counsel that he had received the tape. Amend. Pet. Ex. C, p.34

## A. Timeliness of Claim

Generally a petitioner may not raise in habeas corpus proceedings matters that were, or could have been, raised on direct appeal. *In re Waltreus supra,* at 225; *In re Harris* (1993) 5 Cal. 4th 813, 829. Ineffective assistance of counsel is often challenged by habeas corpus because the facts giving rise to that claim are outside the record. See <u>Appeals and Writs in Criminal Cases</u> § 2.175 (C.E.B. 2nd ed.). In the case at bar, the claimed ineffective assistance of counsel in failing to review the videotape is based upon the record. No additional evidence has been presented by Petitioner. When the habeas petition was originally filed in 2002, it included a declaration from trial counsel Russell Clanton as to several issues, including stating he had no tactical reasons for not interposing certain objections at points in the trial referred to in the appellate court decision. However, the declaration was void of any reference to the failure to review the videotape. No explanation is given why Clanton's declaration, or any subsequent declaration submitted with the amended petition, did not address the issue.

However from the records submitted with the amended petition, it appears Clanton's failure to review the discovery provided by the prosecution constitutes deficient performance of his obligations as trial counsel. See *Williams v. Washington* 59 F. 3rd 673, 680 (7th Cir. 1995) (court is unable to imagine plausible excuse for a decision not to read discovery materials or excusing the failure). As Petitioner suggests from the evidence it may be that Clanton lost or misplaced the tape. He may have then forgot that he ever received it.

Thus, it appears this is one of those cases where there is "no conceivable tactical reason for counsel's error" and the issue should therefore have been raised in the initial appeal rather than waiting to attack the judgment collaterally by habeas petition. Appeals and Writs in Criminal Cases, *supra* § 1B. 29. See *People v. Mendoza Tello*, (1997) 15 Cal. 4th 264. 266 (ineffective assistance of counsel may be raised on direct appeal when "there simply could be no satisfactory explanation" for counsel's failure to act).

### B. Merits of Claim

Assuming that Petitioner is not time barred from raising ineffective assistance of counsel in this petition even though he could have raised it on appeal, the merits of the claim must be examined under the applicable law:

> "To establish entitlement to relief for ineffective assistance of counsel the burden is on the defendant to show (1) trial counsel failed to act in a manner to be expected of reasonably competent attorneys acting as diligent advocate and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings" *People v. Lewis* (1990) 50 Cal 3rd 262, 288.

"This and similar statements of the standard have been consistently applied." 5 Witkin, California Criminal Law Criminal Trials § 204 (3rd ed.)

In *In re Fields*, (1990) 51 Cal. 3rd 1063, the California Supreme Court discussed the showing required to sustain a claim of ineffective representation by reason of incompetent investigation or presentation of evidence at trial. The

petitioner may not simply describe what evidence might have been discovered and produced by competent counsel.

> "Instead, he must generally produce the evidence so credibility of the witnesses can be tested by examination . . . in effect the petitioner must show us what the trial would have been like, had he been competently represented, so we can compare that with the trial that actually occurred and determine whether it is reasonably probable that the result would have been different." *Id.,* at 1071.

If there is no prejudice (i.e. no finding that it is reasonably probable that a more favorable outcome would have occurred but for counsel's failings) then the petitioner is not entitled to relief even if counsel acted incompetently.

In this case Petitioner's Denial at pages 9 – 10 lists five ways that Petitioner claims he was prejudiced:

First, "the videotape clearly established Clark's relationship with Healy. Had Clanton at least viewed the videotape, he certainly would have recognized Clark or Healy committed perjury . . . regarding their relationship, and he could have argued perjury to the jury and requested appropriate instructions and sanctions." However, Mr. Clanton did not need to view the video tape to discern their testimony at trial was at variance on this issue. It may be Clanton did not recognize it is particularly important, as discussed above. Healy's testimony on the issue was relatively short and no one made any issue of it at the time. The videotape only discussed Clark's version of his prior relationship to Healy, whose version was not addressed in the tape. However, counsel would not have gained much knowledge on this issue from the videotape, which was cumulative of information trial counsel already had. Clark's assertion that he knew Healy from years before had been detailed in the Littrell trial the year before (Amend. Pet. Ex. B, pp. 110-112) and Clanton cross-examined Clark extensively about his prior testimony, so Clanton was surely already aware of it. R.T. 784 *ff.* Having viewed the tape in advance was not likely to have made any difference in this regard. The Court notes that Petitioner did not

supply this Court with Clanton's closing argument and this Court does not know what arguments were actually made by Clanton.

Second, "the videotape contained the allegation that Mr. Grizzle attempted to have Healy's daughter killed. Because Clanton did not view the videotape he was surprised by Clark's allegation at trial . . . Clanton could have used the videotape to conduct investigation that would have impeached both Clark and Healy." Petitioner alleges Clanton could also have called attorney Gallegos or Clark's sister to impeach Clark. This argument is conclusory and is not supported by any factual showing that either Clark or Healy lied in the case about anything other than their relationship. As indicated in *Fields,* this is an insufficient "allegation" rather than a production of facts. The trial occurred more than eight years ago and this habeas proceeding began more than five years ago. Petitioner has not submitted evidence as required by *Fields* to show that the outcome would have been any different had trial counsel conducted pre-trial interviews with Gallegos or Clark's sister. Also, the record shows that before trial attorney Clanton had the information Clark provided regarding Gallegos and Clark's sister in the form of the memo from James Rogers. Amend. Pet. Ex. J, Ex C. p. 34. Reviewing the tape would have added little in this regard.

Third, "Clanton also could have made . . ." an Evidence Code section 352 objection that any probative value was outweighed by the danger of unfair prejudice. Counsel made such an argument to the court at sidebar. R.T. 777 – 779. The motion to exclude the evidence was denied.

Fourth, Petitioner alleges defense counsel could have "destroyed" the prosecution's "argument that Clark was telling the truth because he must have obtained the name of Healy's daughter from Mr. Grizzle." After reviewing of the tape, the Court has found nothing in it that supports this argument. The tape set forth Clark's position that he had known Healy; the Court is unaware of any pre-trial information that was available to either party that Healy would testify to the

contrary at trial. Counsel pointed out nothing in the transcript, and the Court did not find, any attempt by anyone to cross-examine Healy on that statement. As noted above, defense counsel was well aware before trial that Clark's position was always that he had known Healy for years.

     Finally, Petitioner argues, "at the very least, had Clanton viewed the videotape by the time of the post-trial hearing, he could have argued the perjury of Clark and Healy as a ground for a new trial." Again, this Court finds nothing in the tape that could have been used to bolster the argument that Healy or Clark committed perjury beyond their testimony at trial. At trial, Clark's testimony was consistent with the statements on the tape: that he had committed perjury in Littrell's trial, that he did so at the behest of Grizzle, that he had known Healy for years, and that Grizzle and Littrell were considering reprisal at Healy by attacking Healy's step-daughter. Healy testified at trial that he didn't know Clark but that members of the Aryan Brotherhood knew Healy had a daughter and the specifics about her. R.T. 896. Thus defense counsel had already had all this information for months when the Petitioner's post-trial motions were argued and the tape would have added nothing of consequence at that point.

     In conclusion, while it appears Petitioner's trial attorney's failure to review the videotape constituted deficient representation, Petitioner has not shown that he suffered constitutional prejudice in that it is not reasonably probable that a more favorable determination would have been reached had defense counsel reviewed the tape before trial.

Petitioner has not made a showing of what evidence could be expected to be adduced at an evidentiary hearing and has not established that he is entitled to relief herein. Therefore the Petition for Habeas Corpus is denied and the Order to Show Cause is discharged.

DATED: JUN 1 8 2007

COPY

_____
**WILLIAM H. FOLLETT**
Judge of the Superior Court

PROOF OF SERVICE BY MAIL (1013a, 2015.5 C.C.P)

I am a citizen of the United States and a resident of the County of Del Norte. I am over the age of eighteen (18) years and am not a party to the entitled action; my business address is 450 H St, Crescent City California 95531.

On Monday, June 18, 2007, I served a copy of the **Ruling on Petition for Writ of Habeas Corpus, FILED 06/18/07** by depositing a true copy in the United States mail in Crescent City, California, in a sealed envelope with postage prepaid, addressed as follows:

Benjamin Coleman
433 G. Street, Suite 202
San Diego, CA 92101

William J. Barlow
Attn: Litigation Department
P.O. Box 7500
Crescent City, CA 95531

Michael Riese, District Attorney
[Courthouse Mailbox #23]

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that it was executed at Crescent City, California this date.

J. McCubbin

DATED: June 18, 2007

Jamie McCubbin
Judicial Assistant

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

FILED

SEP - 6 2007



| In re ELIOT SCOTT GRIZZLE, on Habeas Corpus. | A118448 (Del Norte County Super. Ct. No. HCPB02-5159) |

BY THE COURT:

The petition for writ of habeas corpus is denied.

Dated: SEP - 6 2007    KLINE, P.J. _____ P.J.

1

Court of Appeal, First Appellate District, Div. 2 - No. A118448
**S156305**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ELIOT SCOTT GRIZZLE on Habeas Corpus

The petition for review is denied.

SUPREME COURT
FILED

NOV 1 4 2007

Frederick K. Ohlrich Clerk

_____
Deputy

GEORGE
_____
Chief Justice